IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORY D. GRANT,

    Plaintiff,                        No. 2:07-cv-2700 KJM JFM (PC)

    vs.

GOVERNOR ARNOLD
SCHWARZENEGGER, et al.,         ORDER AND

    Defendants.             FINDINGS & RECOMMENDATIONS

/

        Plaintiff is a civil detainee confined at Coalinga State Hospital (Coalinga) under California's Sexually Violent Predators Act, California Welfare and Institutions Code § 6600 et seq. (hereafter "SVPA") proceeding through counsel with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that his federal constitutional right to substantive due process was violated by the termination of hormone treatment combined with refusal to provide him with alternative treatment, particularly surgical castration. This matter is before the court on defendants' motion for summary judgment.[1] Defendants seek summary judgment on the grounds

/////

/////

---

[1] The court heard oral argument on the motion on April 21, 2011. Joe Ramsey, Esq. and Mary Sechser, Esq. appeared as counsel for plaintiffs. Elizabeth Anne Linton, Deputy Attorney General, appeared as counsel for defendants.

1

that this action is barred by the statute of limitations and that plaintiff's claim for damages in the amount of the cost of his orchiectomy is barred by the doctrine of collateral estoppel.[2]

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See

---

[2] Pursuant to a stipulation of the parties, approved by this court by order filed November 3, 2010, the parties agreed that, with the exception of plaintiff's deposition, initial discovery and motion practice would be limited to statute of limitations issues. See Stipulation and Order, filed November 3, 2010, at 3.

1 Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to
2 establish the existence of this factual dispute, the opposing party may not rely upon the
3 allegations or denials of its pleadings but is required to tender evidence of specific facts in the
4 form of affidavits, and/or admissible discovery material, in support of its contention that the
5 dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party
6 must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
7 of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
8 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
9 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
10 return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
11 1436 (9th Cir. 1987).

12       In the endeavor to establish the existence of a factual dispute, the opposing party
13 need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
14 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
15 versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
16 judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
17 genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
18 committee's note on 1963 amendments).

19       In resolving the summary judgment motion, the court examines the pleadings,
20 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
21 any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
22 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
23 court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
24 Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
25 produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
26 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

## DEFENDANTS' MOTION

I. Facts

Unless otherwise noted, the following facts are undisputed. Plaintiff has been paraplegic and confined to a wheelchair since 1981, when he was injured in an industrial accident. Plaintiff's Ex. 5. In 1998, plaintiff was committed to Atascadero State Hospital (ASH), an institution run by the California Department of Mental Health (DMH), after a jury found him to be a sexually violent predator within the meaning of California Welfare and Institutions Code § 6600 et seq. Defendants' Ex. B.[3] In 1999, while housed at ASH, plaintiff began taking Depo Provera, an antiandrogen drug used to treat sex offenders. Declaration of Gabrielle Paladino in Support of Defendants' Motion for Summary Judgment or Partial Summary Judgment, filed February 18, 2011 (Paladino Declaration), at ¶¶ 3, 5. Plaintiff was seen by defendant Dr. Gabrielle Paladino approximately once a month from the time he started

---

[3] Defendants have requested that the court take judicial notice of several documents filed in state court proceedings involving plaintiff. See Exs. A-Q of Defendants' Request for Judicial Notice in Support of Defendants' Motion for Summary Judgment, filed February 18, 2011. Plaintiff objects to the request to the extent that defendants seek judicial notice of the "genuineness, truth, veracity, interpretation and meaning" of the contents of the documents, contending that judicial notice must be limited to the "existence, facial content, and authenticity of the document." Plaintiff's Objections to Defendants' Evidence in Support of Motion for Summary Judgment or Partial Summary Judgment, filed April 6, 2011, at 2. Plaintiff also objects to several of the documents on the grounds of relevance, lack of foundation, hearsay, opinion and, as to one of the documents, that it is "misleading and assumes facts not in evidence." Id. at 3-4. Good cause appearing, the court will take judicial notice of the existence and facial content of all of the documents. Said exhibits will be referred to as Defendants' Ex. A-Q, respectively.

Plaintiff has also requested that the court take judicial notice of several documents filed in state court proceedings involving petitioner. Good cause appearing, plaintiff's request will be granted as to the existence and facial content of all of the documents. Said exhibits will be referred to as Plaintiff's Ex. 1-6, respectively.

taking Depo Provera until January 18, 2002, when he was transferred to Santa Cruz County for recommitment proceedings under the SVPA. Id. at ¶5; Defendants' Ex. E at 1-2.[4]

   On April 29, 2002, plaintiff filed a motion in the Santa Cruz County Superior Court for an order permitting himself to be surgically castrated. The motion was filed in the same case as the proceedings brought against him under the SVPA. On May 16, 2002, plaintiff filed a supplemental motion for an order requiring the County of Santa Cruz to bear the cost of the orchiectomy on the grounds of plaintiff's indigency. Defendants' Ex. D. Included with the supplemental motion was a declaration from plaintiff's attorney, in which she averred that DMH had "issued a special order, effective March 23, 2001, wherein it stated that state hospitals will not perform or pay for an orchiectomy when requested by patients, due to the uncertainty regarding whether a judicially committed patient can give voluntary and non-coerced informed consent for this procedure. However, state hospitals will support the patient's election of the use of anti-androgen treatment as an adjunct to sex offender treatment, and do no [sic] object if a patient petitions the court of their commitment with a request for an orchiectomy." Defendants' Ex. D, at 3. A copy of the state policy statement was attached as Exhibit A to the Supplemental Motion. See Defendants' Ex. D. The County of Santa Cruz opposed only that part of the motion which sought payment for the procedure by the County. See Defendants' Ex. E. On September 12, 2002, the Superior Court issued a minute ordering that the County did not have to pay for the procedure and directing county counsel to prepare the order. Defendants' Ex. G. On September 19, 2002, the Superior Court issued a written order denying the motion. Defendants' Ex. H.

   On July 10, 2003, the Superior Court held a further hearing on plaintiff's motion. Defendants' Ex. J. Two witnesses, including plaintiff, testified. Id. At the conclusion of the hearing, the court granted plaintiff's request for an orchiectomy and ruled that plaintiff would

---

[4] In her declaration, defendant Paladino avers that plaintiff was transferred to state prison in January 2002. The record before the court suggests that he was transferred to the County of Santa Cruz for recommitment proceedings under the SVPA. See Defendants' Ex. E at 1-2.

5

have the procedure done "at no cost to the County of Santa Cruz or the State of California." Id. The court's written order, prepared by plaintiff's attorney in the state court proceedings, provided:

> IT IS HEREBY ORDERED, that respondent Gregory Grant, at his own cost and expense, can be transported, with security, from any place of his confinement, including Atascadero State Hospital, for the purposes of obtaining an orchiectomy from the doctor of his choice. This surgery is to occur at a date and time arranged by respondent which is compatible with all of those involved. The cost of both surgery, and the cost of transportation and security, as anticipated by this order, is to be borne by respondent.

Defendants' Ex. K.

On July 21, 2003, the Superior Court ordered plaintiff returned to ASH "as soon as possible." Defendants' Ex. L. Plaintiff arrived back at ASH on July 23, 2003. Paladino Declaration at ¶ 6. Defendant Paladino met with him the next day in the Antiandrogen Bone Density Clinic. Id. She told plaintiff that "he must obtain a bone density scan prior to being prescribed Depo Provera or another antiandrogen." Id. Plaintiff "never had the bone density scan done" and was therefore "permanently taken off of Depo Provera as of July 23, 2003." Id. Plaintiff disputes that the failure to get a bone scan was the reason the Depo Provera was stopped. At his deposition, plaintiff testified that defendant Paladino told him that she was stopping the Depo Provera because he had developed osteoporosis. Deposition of Gregory Grant, December 30, 2010, (Grant Deposition) at 17-18. Plaintiff also testified that it was his "understanding from Dr. Palladino that she would either return" him to Depo-Provera or to Lupron, another antiandrogen medication. Id. at 21.

On August 29, 2005, plaintiff underwent an orchiectomy. Defendants' Ex. M. Following the surgery, he remained at ASH until May 17, 2006, when he went back to Santa Cruz for court proceedings. Ex. A to Declaration of Carol Holman in Support of Defendants' Motion for Summary Judgment, filed February 18, 2011 (Holman Declaration). Except for two periods, from May 17, 2006 to May 26, 2006, and again from August 13, 2007 to October 2,

2007 when he was in Santa Cruz County for court proceedings, he was continuously at ASH until October 3, 2007, when he was transferred to Coalinga. Id. For all times relevant to the instant motion, thereafter he was continuously at Coalinga.

On November 9, 2007, plaintiff signed and dated the complaint with which he initiated this action.

II. Legal Arguments

A. Statute of Limitations

Defendants' first contention is that this action is barred by the statute of limitations. California law determines the applicable statute of limitations in this § 1983 action. See Wilson v. Garcia, 471 U.S. 261 (1985). The applicable state limitations period is two years. See Cal. Code Civ. Proc. § 335.1; see also Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). California law "provides for the tolling of a statute of limitations for a period of up to two years based on the disability of imprisonment." Jones, 393 F.3d at 927 (citing Cal. Civ. Proc. Code § 352.1). As a civil detainee, plaintiff is not entitled to statutory tolling under this provision. See id. at 927. However, "California's equitable tolling doctrine operates to toll a statute of limitations for a claim asserted by a continuously confined civil detainee who has pursued his claim in good faith." Id. at 928.[5]

Federal law governs when plaintiff's § 1983 claims accrued and when the limitations period begins to run. Cabrera v. City of Huntington Park, 159 F.3d 374, 379 (9th Cir. 1998). Under federal law, "the claim generally accrues when the plaintiff 'knows or has reason to know of the injury which is the basis of the action.'" Id. (citations omitted).

/////

---

[5] Defendants also moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) on the ground, inter alia, that this action is time-barred. That aspect of defendants' motion was denied on the ground that resolution of whether plaintiff is entitled to equitable tolling depends on matters beyond the scope of the pleadings. See Findings and Recommendations, filed February 10, 2010, at 5; Order filed March 15, 2010.

Defendants present two separate arguments in support of their contention that this action is time barred. First they contend that if plaintiff's claim arising from his surgical castration accrued on August 29, 2005, the date of his surgery, it is time-barred because it was not filed until November 9, 2007 and plaintiff is not entitled to equitable tolling. In the alternative, defendants contend that even if plaintiff is entitled to equitable tolling for a period of two years, this claim "began to accrue" before April 29, 2002, when he filed his motion in the superior court, and not later than July 10, 2003, when the superior court issued its order granting plaintiff's request for the surgery but providing that plaintiff would pay for the surgery. Defendants contend that plaintiff's claim arising from the termination of Depo Provera accrued on July 23 or 24, 2003, when he was told he would not receive Depo Provera without a bone density scan. Plaintiff contends that he is entitled to equitable tolling and that his cause of action accrued when he suffered damage. He contends that he suffered non-economic damages "as his fantasies gradually returned after he was taken off the [Depo-Provera] and continued until a few months after his orchiectomy was performed on August 29, 2005" and that he suffered economic damages shortly after August 29, 2005 when he was billed for the surgery. Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment or Partial Summary Judgment, filed April 6, 2011, at 7.

The injuries which form the basis of this action are those plaintiff sustained after he was taken off antiandrogen medication without being provided alternative therapy, and when he underwent the surgery.[6] There are factual disputes over why plaintiff was not provided with an alternative antiandrogen and what, if anything, he was promised by one of his treating physicians at ASH concerning alternative therapy. The undisputed facts suggest that plaintiff's claims accrued on or about August 29, 2005, the date on which he underwent surgery.

---

[6] Plaintiff identifies the latter as economic damages sustained when he was billed for the surgery shortly after August 29, 2005. At his deposition, he testified that his attorney took care of the bill, that the attorney is "not worried about it" and that plaintiff considers it "a loan that [he is] morally obligated" to repay. Grant Deposition at 59.

1  This action was filed on November 9, 2007, over two years after the surgery.
2  Thus it is timely only if the doctrine of equitable tolling applies.  As noted above, in <u>Jones v.</u>
3  <u>Blanas</u>, the United States Court of Appeals for the Ninth Circuit held that "California's equitable
4  tolling doctrine operates to toll a statute of limitations for a claim asserted by a continuously
5  confined civil detainee who has pursued his claim in good faith."  <u>Jones</u>, at 930.  The <u>Jones</u> court
6  identified the "key fact pertaining to the applicability of equitable tolling" as the plaintiff's civil
7  commitment.  <u>Id</u>. at 928 n.6.  The court reasoned that

> [t]he injustice arising from a refusal to toll the statute of limitations for Jones would be great, particularly in light of California's tolling provision for the disability of imprisonment. Observing that the law provides for tolling for criminal inmates "in recognition of their more limited ability to investigate their claims, to contact lawyers and to avail themselves of the judicial process," we have emphasized that"[i]n terms of limitations on the prisoner, continuous custody is the relevant disability." <u>Elliott v. City of Union City</u>, 25 F.3d 800, 803 (9th Cir.1994). For this reason, we have held that "actual, uninterrupted incarceration is the touchstone" for applying California's tolling provision for the disability of imprisonment. <u>Id</u>. (quoting <u>Bianchi v. Bellingham Police Department</u>, 909 F.2d 1316, 1318 (9th Cir.1990)) (internal quotation marks omitted).
>
> The rationale behind the "actual, uninterrupted incarceration" rule applies with equal force to the case of an individual continuously detained under civil process. As the California Supreme Court recognized long ago, "[t]he destruction of an individual's personal freedoms effected by civil commitment is scarcely less total than that effected by confinement in a penitentiary." <u>People v. Burnick</u>, 14 Cal.3d 306, 121 Cal.Rptr. 488, 498, 535 P.2d 352, 363 (1975). Like criminal inmates, civil detainees litigate under serious disadvantages. The civilly confined are limited in their ability to interview witnesses and gather evidence, their access to legal materials, their ability to retain counsel, and their ability to monitor the progress of their lawsuit and keep abreast of procedural deadlines. See <u>Rand v. Rowland</u>, 154 F.3d 952, 958 (9th Cir.1998) (cataloguing the litigation obstacles that arise from some of the "unique handicaps of incarceration"). Thus our rationale for the "actual, uninterrupted incarceration" rule in the context of tolling for criminal imprisonment is equally applicable to the context of civil confinement: civil detainees, like their criminal counterparts, suffer from "more limited ability to investigate their claims, to

/////

/////

1           contact lawyers and to avail themselves of the judicial process."
2           Elliott, 25 F.3d at 803.

3 Jones, at 928-29.

4       The Jones court went on to find that equitable tolling was "particularly
5 appropriate" for the plaintiff in that case given the conditions of his confinement during the
6 relevant period, and that the access to the courts claim raised by Jones "hint[ed] at another
7 pernicious consequence of refusing to toll the statute of limitations for the civilly confined." Id.
8 at 929. However, the holding in Jones is not limited to civil detainees in particular conditions of
9 confinement or who raise particular claims. Rather, as noted above, the "key fact" is whether the
10 plaintiff was civilly committed for the relevant period. Id. at 928 n.6. Here, there is no dispute
11 that plaintiff has been continuously confined as a civil detainee for all periods relevant to the
12 instant action.

13       The Jones court's holding also includes as a prerequisite to equitable tolling a
14 finding that the plaintiff "has pursued his claim in good faith." Id. at 930. However, the opinion
15 in Jones contains no discussion of how the plaintiff in that case met the "good faith" requirement.

16       California's doctrine of equitable tolling includes a requirement that the
17 "'plaintiff's conduct must have been reasonable and in good faith.'" Fink v. Shedler, 192 F.3d
18 911, 916 (9th Cir. 1999) (quoting Bacon v. City of Los Angeles, 843 F.2d 372, 374 (9th Cir.
19 1988). One example of "good faith" in cases cited by the Jones court is initial pursuit of
20 alternative remedies in a different forum. See Daviton v. Columbia/HCA Healthcare Corp., 241
21 F.3d 1131, 1137 (9th Cir. 2001) (discussing Addison v. State of California, 21 Cal.3d 313 (1978)
22 (cited in Jones at 930). See also Lantzy v. Centex Homes, 31 Cal.4th, 2 Cal.Rptr. 655, 661
23 (2003) (and cases cited therein). However, there is nothing in the Jones case to suggest that the
24 plaintiff in Jones had initially pursued his civil rights claims in a different forum; to the contrary,
25 the holding of Jones rests in large measure on the obstacles faced by a civil detainee to pursuing
26 claims in any forum.

It appears that the good faith requirement of California's equitable tolling doctrine is addressed to the plaintiff's relative diligence in pursuing the claims for which tolling is sought. Thus, in 2008, the California Supreme Court cited with approval the following interpretation given to the good faith requirement by state appellate courts:

> "The third prerequisite of good faith and reasonable conduct on the part of the plaintiff is less clearly defined in the cases. But in Addison v. State of California, ..., 21 Cal.3d 313, 146 Cal.Rptr. 224, 578 P.2d 941[,] the Supreme Court did stress that the plaintiff filed his second claim a short time after tolling ended." ([ Collier v. City of Pasadena, 142 Cal.App.3d 917] at p. 926 [(1983)].

McDonald v. Antelope Valley Community College District, 45 Cal.4th 88, 102 n.2 (2008) (quoting Downs v. Department of Water & Power, 58 Cal.App.4th 1093, 1100 (1997)). The Collier court, quoted in Downs and in turn in McDonald, went on to suggest that delay in filing a claim "until the statute on that claim had nearly run, even after crediting the tolled period" might render a plaintiff's conduct unreasonable and not in good faith. Collier, 142 Cal.App.3d at 926.

The "tolled period" approved by the Jones court for a civil detainee is a period of "up to two years" beyond the governing limitation period. Jones, at 927-28. Here, plaintiff filed this action two years, two months and eleven days after his surgery. Given that the applicable limitation period is two years, the additional two months and eleven days that lapsed before plaintiff filed this action is well within the period identified by the Jones court.

Defendants contend that plaintiff did not pursue his claims in good faith because he took no affirmative steps to pursue the claims at bar until October 2007, more than two years after the surgery. Plaintiff contends that he had difficulty with access to the law library because of his wheelchair and the incontinence from which he suffers, and because of the total of sixty-one days that he spent in SVP proceedings in Santa Cruz County in 2006 and 2007.

At his deposition plaintiff testified that there was a "terrible problem" with law library access and with "getting papers" at ASH, and that he was able to get forms for a § 1983

/////

1  action at Coalinga that he was unable to get at ASH. Grant Deposition at 69.[7] He further
2  testified that he did not use the law library at Coalinga to prepare the complaint filed in this
3  action and that complaint form he used is "self explanatory. It asks questions, you answer them
4  and then it's sent in." Id. at 70.[8] The record shows that he filed this action approximately one
5  month after he was transferred to Coalinga.

6        As noted above, plaintiff filed this action two months and eleven days after the
7  two year period of limitation ended. Nothing in the record before this court suggests that
8  plaintiff acted unreasonably or without good faith in pursuing the civil rights claims raised in this
9  action. For the foregoing reasons, this court finds that this action is not barred by the statute of
10 limitations. Defendants' motion for summary judgment should on that ground should be denied.

      B. Collateral Estoppel

12       Defendants also contend that plaintiff's claim that the defendants in this action
13 should pay the costs of the orchiectomy is barred by the doctrine of collateral estoppel.
14 Specifically, defendants contend that plaintiff litigated the question of who should bear the costs
15 of the orchiectomy in the Santa Cruz County Superior Court and the judge ruled that plaintiff
16 should bear those costs, so plaintiff cannot relitigate that question here.

---

[7] Plaintiff also testified that he "wanted to get the court order before [he] filed an action anyway." Grant Deposition at 69. His testimony is somewhat confusing in this regard; it appears that he decided to wait until he obtained an order from the superior court for permission to have an orchiectomy before he pursued a civil rights complaint against DMH and their staff, but he obtained that order in 2003. In his declaration submitted in opposition to the motion for summary judgment, plaintiff avers, inter alia, that "[f]rom the time [he] was first imprisoned through the time [he] was first committed as a civil detainee until now, when certain events occurred do not exist in my mind. I remember events but cannot place to points in time." Declaration of Gregory Grant in Opposition to Motion for Summary Judgment, filed April 6, 2011, at ¶ 5.

[8] Plaintiff's deposition testimony also demonstrates that he had access to an attorney after he was taken off the Depo-Provera and through the time of the surgery. He testified that his attorney told him that receiving additional antiandrogen medication "was a lost cause" and that "filing a lawsuit was going to take years. So he would attempt to find other ways to gain the surgery." Grant Deposition at 41. Plaintiff testified that his attorney "arranged the money" for the surgery and took care of the bill. Id. at 55, 58.

> "The party asserting collateral estoppel must first show that the estopped issue is identical to an issue litigated in a previous action. In addition, '[i]n order for collateral estoppel to apply, the issue to be foreclosed in the second litigation must have been litigated and decided in the first case.' " Kamilche [Co. v. U.S.], 53 F.3d [1059] at 1062 [(9th Cir. 1995)] (quoting Starker [v. U.S.], 602 F.2d [1341] at 1344 [(9th Cir. 1979)]) (other citation omitted); see also Durkin v. Shea & Gould, 92 F.3d 1510, 1515-16 (9th Cir.1996) (collateral estoppel requires "a final judgment on the merits"). "Collateral estoppel is inappropriate if there is any doubt as to whether an issue was actually litigated in a prior proceeding." Eureka Fed. Sav. & Loan Ass'n v. American Casualty Co. of Reading, Penn., 873 F.2d 229, 233 (9th Cir.1989); see also Durkin, 92 F.3d at 1515. " 'If the decision could have been rationally grounded upon an issue other than that which the defendant seeks to foreclose from consideration, collateral estoppel does not preclude relitigation of the asserted issue.' " Id. (quoting Davis & Cox v. Summa Corp., 751 F.2d 1507, 1518-19 (9th Cir.1985)).

Steen v. John Hancock Mut. Life Ins. Co., 106 F.3d 904, 912 (9th Cir. 1997). The issue litigated in the state court action was whether the costs of the orchiectomy would be covered by Medi-Cal or Medi-Cruz. That issue is not identical to the issue at bar: whether plaintiff's constitutional rights were violated in connection with treatment decisions made by the defendants in this action and, if so, whether the costs of the surgery are a proper element of any damages plaintiff may have suffered. The issue raised by the instant claim was not actually litigated in the state court proceedings. For this reason, this court finds that defendants have not met their burden of demonstrating that the issue raised in this action is barred by collateral estoppel.

In accordance with the above, IT IS HEREBY ORDERED that:

1. Defendants' February 18, 2011 request for judicial notice is granted;

2. Plaintiff's April 6, 2011 request for judicial notice is granted; and

IT IS HEREBY RECOMMENDED that:

1. Defendants' February 18, 2011 motion for summary judgment be denied; and

2. This action be referred back to the undersigned for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen

13

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 28, 2011.

_____
UNITED STATES MAGISTRATE JUDGE

12
gran2700.msj